**BROWARD COUNTY PORT AUTHORITY v. ARUNDEL CORPORATION.**

No. 14241.

United States Court of Appeals Fifth Circuit.

June 30, 1953.

R. R. Saunders and John U. Lloyd, Ft. Lauderdale, Fla., for Broward County Port Authority.

N. J. Durant, Miami, Fla., Arthur H. Shoupe, Lake Worth, Fla., for Arundel Corporation.

Before BORAH, RUSSELL and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

Arundel and Port Authority entered into a written contract by which the former obligated itself to excavate a channel 35 feet deep and 300 feet wide at Port Everglades, Florida, and place the excavated material as provided, in consideration of a stated sum per cubic yard of material excavated and placed. The contract provided that the Port Authority's engineer would act as ref-

eree "to prevent all disputes and litigations." It was agreed:

"* * * that the said Engineer shall decide all questions, difficulties and disputes, of whatever nature, which may arise relative to the interpretation of the plans, construction, prosecution and fulfillment of this Contract, and as to the character, quality, amount and value of any work done, and materials furnished, under or by reason of this Contract, and his estimates and decisions upon all claims, questions and disputes shall be final and conclusive upon the parties thereto."

A further provision of the contract, the provision from which this litigation evolves, is as follows:

"G. Slope: The banks of the excavation shall be on a Slope of one foot horizontal to one foot vertical, or in a stepped formation which will average to a one to one slope. The work will be paid for on the basis of a one to one slope."

This suit was filed by Arundel to recover what it claims to be the balance due under the contract. No question is presented as to the amount of material removed from the channel. The question presented by the pleadings and supplemental material presented in support of Arundel's motions for summary judgment is whether the material was removed in accordance with the above provision. Stewart, the Port Authority engineer, has approved, in fact he submitted to the Port Authority, the final estimate which furnishes the basis of this suit. He testified by deposition that all of the work was done in accordance with the contract. By affidavit he stated that his estimate "indicates" that the total yardage as arrived at by computations set forth therein is in excess of what would have been included between the one-to-one slopes. In another affidavit he stated that the project contracted for was to create a 300 foot channel with a depth of 35 feet; that Arundel did not excavate outside the one-to-one slopes, but material from the outside sloughed, fell and caved into the channel area and this was required to be excavated in order to accomplish the creation of the channel intended by the specifications. Port Authority has tendered the sum estimated to be due, excluding the material which came from without the one-to-one slope, but has not accepted and approved its engineer's final estimate, which, under the contract, was necessary to be done.

The court overruled Arundel's first two motions for summary judgment, but granted its third motion, apparently based upon the theory expressed in Stewart's last affidavit. However, the court denied Arundel's claim that it was entitled to interest on the sum awarded from the date of the submission of the engineer's final estimate. Both parties have appealed: Port Authority appealing from the grant of the motion for summary judgment, and Arundel from the denial of interest.

The first question which emerges from the record therefore is whether the judgment of the trial court evidences a permissible accommodation and consistent application of the "referee clause" and the "slope clause", referred to above. We think it does. While the slope clause provides for a one-to-one slope and "that the work will be paid for on the basis of a one-to-one slope," it does not expressly deny the right to payment for material which sloughs or falls into the channel area, which manifestly would have to be removed in order to provide a channel of the depth prescribed. Therefore, we are unable to say that a decision of the Port Authority's engineer, based upon his interpretation of the prosecution and fulfillment of the contract, as provided by the referee clause, that removal of such slough material was required in order to create the channel intended by the specifications, is contrary to the terms of the contract. Thus viewed, there can be no question that, as provided by the contract, such an estimate and decision of the Port Authority's engineer is final and conclusive upon the Port Authority, since no question of fraud or imposition is raised. "Where the contract contains provisions referring the estimate of the quantity and quality of the work absolutely to the determination of the Company's Engineer, or any particular party, and provides that his decision shall be final, no relief from his decision can or-

dinarily be obtained in a Court of Equity, unless upon the ground of partiality or obvious mistake." In such a case, "The measurement and computation of the engineer under the contract and agreement of the parties furnishes the sole and exclusive basis for the amount of payment to be made". Duval County v. Charleston Engineering & Contracting Co., 101 Fla. 341, 134 So. 509, 516.[1] Since we do not construe the slope clause of the contract to specifically exclude payment for any material removed which falls from outside the one-to-one slope, we reject the alternative argument of the Port Authority that if the material did cave in from without the slope it was a hazard which Arundel assumed under the contract and that the cost of excavation thereof, though done to comply with the other requirements of the contract, is nevertheless excluded by the specific provision that Arundel would be paid on the basis of a one-to-one slope. There appears in the record no dispute as to any material fact. The judgment in favor of the plaintiff was not contrary to law, as contended, and the entry of summary judgment by the court for the balance shown to be due by the final estimate of the Port Authority engineer was not erroneous.

■ By its appeal, Arundel assigns error upon the refusal of the court to award interest on the indebtedness for which the court awarded judgment. While no reason was given by the court to support its denial of interest, we may assume from the argument of the parties here that such denial was based upon the court's conclusion that the Port Authority, as a political subdivision of the state partaking of the nature of a county, was exempt from the payment of interest. Arundel contends that the corporate nature of the Port Authority is more nearly similar and akin to a municipal corporation which, in Florida, is subject to liability for interest upon indebted-

ness. The difference of approach by the parties evidently arises from the distinction recognized by the Florida law. While neither the Constitution nor the statutes of the State of Florida provide that the State shall be immune to the payment of interest on its obligations, such immunity is declared "an attribute of sovereignty and is implied by law for the benefit of the state". Treadway v. Terrell, 117 Fla. 838, 158 So. 512, 517.[2] The same rule is likewise applied to governmental units of the state, Board of Public Instruction v. Barefoot, 140 Fla. 429, 193 So. 823, including counties. National Bank of Jacksonville v. Duval County, 45 Fla. 496, 34 So. 894; Duval County v. Charleston Engineering & Contracting Co., supra. However, it is well settled that Florida law authorizes the recovery of interest from a municipal corporation upon its obligations. Highway Const. Co. v. City of Miami, supra; City of St. Petersburg v. Meyers, 5 Cir., 55 F.2d 810. The foregoing authorities likely induce the concession of both parties that a county is immune from the payment of interest and Arundel's insistence that the Port Authority is a municipal corporation. Port Authority does not contend it is a county, but denies that it is a municipal corporation and urges that it should be analogized to a county with respect to the exemption from interest, as was the County Board of Public Instruction in Board of Public Instruction v. Osburn, 5 Cir., 101 F.2d 919, 922.

■■ Examination of the corporate nature of the Port Authority as outlined and prescribed in the Acts of the Florida Legislature incorporating it and its predecessors [3] and defining its powers, functions and duties, leads to the conclusion that Port Authority does not enjoy the immunity from the payment of interest on its obligations which a Florida county does vicariously as an agent of the state by virtue of

---

1. See also Highway Const. Co. v. City of Miami, 5 Cir., 126 F.2d 777, and citations; 9 Am.Jur., Building and Construction Contracts, § 36 et seq.

2. Compare United States v. North Carolina, 136 U.S. 211, 10 S.Ct. 920, 34 L. Ed. 336.

3. Among these are Chapter 17506, Laws of Florida, 1935; Chapter 18442, Laws of Florida, 1937; Chapter 23207, Laws of Florida, 1945; Chapter 24411, Laws of Florida, 1947; Chapter 27427, Laws of Florida, 1951.

its peculiar office as a branch of the general administration of the policy of the state. Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372. While the Port Authority has broad general powers, in some respects similar to those of a governmental subdivision, they are all directed and authorized to be exercised to the ultimate end of the development, maintenance and operation of a port, a business of a restricted nature, and it does not possess the usual incidents and powers of a governmental subdivision of the state. It is in effect a business corporation and the discharge of its functions, though amply authorized, is in the forwarding or carrying on of a proprietary function. The Port Authority is created by the Legislature and its future rights, privileges and obligations are subject to change or modification by that body. It is designated by the Legislature as a body politic and corporate and its existence and powers are at all times subject to the will of its creator, the Legislature.[4] The Port Authority is not exactly similar to a municipal corporation such as a city or town, but it certainly ranks no higher in the scale of exemption from interest upon the payment of its obligations. We hold the Port Authority liable for interest upon its obligations lawfully incurred and unjustifiably withheld from its creditors. However, in this case we do not think the Port Authority should be required to pay interest upon the entire indebtedness adjudged to be due by it for the reason that of the total sum embraced within the judgment of the trial court, the amount of $24,654.31 was not disputed and a check for this amount, which contained a statement that it was given without prejudice to the rights of either party under the contract, was forwarded to Arundel but returned by it. We think Arundel is not entitled to interest upon this amount, but is entitled to interest upon the balance of the judgment from the time the court ascertains the amount became due and payable.

Upon the appeal of the Port Authority, the judgment is affirmed.

Upon the appeal of Arundel, the judgment denying interest is reversed and the cause remanded for the allowance of interest consistent with this opinion.

4. Compare Christie v. Port of Olympia, 27 Wash.2d 534, 179 P.2d 294, 301. We have not overlooked the decision of the late Judge Waller of this court, when sitting as a district judge, in Rogers v. Broward County Port Authority, not reported, holding that the Authority was exempt from the requirements of the Fair Labor Standards Act as a "political subdivision of a state." However, that decision was not required to, and did not, consider the precise nature of such a subdivision or its liability for interest.